IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | CRIMINAL NO.  AMD-08-0149 |
| | : | |
| **BRIAN KEITH ROSE** | : | |
| | : | |

ooOoo

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR FOR APPROPRIATE RELIEF AND DISCLOSURES RELATING TO ABUSE OF THE GRAND JURY PROCESS

The United States, by its undersigned attorneys, opposes the Defendant's Motion for Appropriate Relief and Disclosures Relating to Abuse of the Grand Jury Process and states:

**A.     Facts:**

On February 6, 2006, the defendant was indicted in the Circuit Court for Baltimore County for first degree murder, attempted armed carjacking, attempted robbery, use of a handgun in commission of a felony and a crime of violence ("the state case"). As set forth fully in the government's opposition to the defendant's motion to dismiss for speedy trial violations, the state case was set for trial and postponed a number of times.

On March 14, 2007, the defense in the state case filed a motion to exclude evidence of the defendant's fingerprints found on the inside of the window of the murder victim's automobile. On October 19, 2007, the trial judge granted the motion. On February 21, 2008, the judge denied the state's motion to reconsider the judge's unprecedented and legally unsupported order to suppress the fingerprint evidence.

Although the government had had earlier discussions with state authorities about the status of the state case in light of the trial judge's initial ruling to exclude the fingerprints, it was not until the trial judge refused to reconsider her earlier ruling that there were serious discussions about

charging the defendant in federal court. At that point, the state believed that the unappealable ruling on the fingerprint evidence had severely crippled the case against the defendant. A final trial date in the state case had been set for April 7, 2008 by agreement of the parties. The government therefore had until April 7, 2008 to charge the defendant or the defendant would have been released upon dismissal of the state case on that date.[1]

On or about February 26, 2008, the government had grand jury subpoenas issued and as of March 11, 2008, the government began to put witnesses into the grand jury. The government's investigation had progressed to the point that on April 1, 2008, the last grand jury date prior to the April 7th state trial date, the defendant was indicted federally for carjacking resulting in death, use of a firearm in relation to a crime of violence and use of a firearm resulting in death. This initial indictment was limited to the events on January 5, 2006 and essentially mirrored the charges in the state case. The defendant was then arrested on the federal charges and detained in federal custody.

Due to significant information indicating that the defendant was involved with others in perpetrating the carjacking/murder as well as another similar carjacking in Baltimore City, the government continued its investigation into, *inter alia*, (1) additional charges against the defendant arising out of the carjacking/murder and other related events near the time to the carjacking/murder; and (2) the involvement of other persons in the carjacking/murder as well as in other related events near the time of the carjacking/murder. On June 10, 2008, the superseding indictment was returned against the defendant charging him with the additional crimes of conspiracy to commit carjacking between at least December 1, 2005 through January 18, 2006, carjacking on January 2, 2006, and

---

[1] During this period, the state and the defendant were engaged in plea negotiations in anticipation of the federal indictment. No agreement was obviously reached.

the use of a firearm in relation to the carjacking on January 2, 2006.

**B.     Argument:**

Despite the fact that the government obtained a superseding indictment adding new charges against the defendant, the defense argues that the government, in continuing its investigation after the initial indictment, abused "the grand jury process for the sole or primary purpose of discovering additional evidence relating to the charges contained in [the defendant's] initial indictment." *Defense Motion* at 4. Such a claim is completely groundless.

The Fourth Circuit has recognized that "courts should not intervene in the grand jury process absent [a] compelling reason." *United States v. Moss*, 756 F.2d 329, 332 (4th Cir.1985)(internal citations and quotations omitted). "A presumption of regularity attaches to a grand jury's proceedings." *Id*. "This presumption attaches even after the grand jury has returned an initial indictment. After all, superseding indictments setting forth new charges or adding new defendants are familiar fare." *United States v. Flemmi*, 245 F.3d 24, 28 (1st Cir. 2001). The defendant has "the burden of demonstrating that an irregularity occurred." *Moss*, 756 F.2d at 332.

Prosecutors "cannot utilize the grand jury solely or even primarily for the purpose of gathering evidence in pending litigation." *United States v. Brothers Const. Co. of Ohio*, 219 F.3d 300, 314 (4th Cir.2000). Once a defendant is indicted, "the Government is barred from employing the grand jury for the 'sole or dominant purpose' of developing additional evidence against the defendant." *Id*.  However, contrary to defense claims in this case, the "sole or dominant purpose" standard is not a sword but a shield against interference with grand jury investigations. "Because the 'grand jury's investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed,' the sole or

3

dominant purpose test is necessary to prevent any undue intrusion into the investigatory power of the grand jury." *Moss*, 756 F.2d at 332 (citing *United States v. Dionisio*, 410 U.S. 1, 13 (1973). The government is not barred from making "a good-faith inquiry into charges that are not covered in the indictment, 'even if it uncovers further evidence against an indicted person.'" *Brothers Const. Co. of Ohio*, 219 F.3d at 314 (citing *Moss*, 756 F.2d at 332). "[W]here there is another legitimate purpose behind the grand jury investigation, the proceeding would not be improper merely because the Government may derive an incidental benefit." *United States v. Gibbons*, 607 F .2d 1320, 1328 (10th Cir.1979).

In its motion, the defense concedes the obvious, namely, "that even after the initial indictment was returned in this Court, the Government was entitled to conduct an investigation of additional crimes by [the defendant]" and "the inclusion of new defendants or new charges in a superseding indictment tends to undermine the suggestion that the grand jury was [misused]." *Defense Motion* at 3,4. *See also Flemmi*, 245 F.3d at 28 ("[T]he presumption of regularity generally persists... when the grand jury's investigation leads to the filing of additional charges against previously indicted defendants."); and *United States v. Avila*, 2004 WL 1698800, *1 (N.D.Ill.) (unpublished) ("The inclusion of ... new charges in a superseding indictment undermines the suggestion that the grand jury was used for the primary purpose of gathering evidence against a formerly indicted defendant."). Despite such concessions, the defense presses the specious argument, without any legal precedent, that since the state had already conducted an investigation and "the Government had more than adequate opportunity to take advantage of the evidence obtained by state prosecutors over two years," the government should now be penalized for conducting its own investigation. *Defense Motion* at 4. The government realizes that the defense wishes that the

4

government would have simply adopted the state investigation and rested. However, the federal government "has the power, inherent in any sovereign, independently to determine what shall be an offense against its authority and to punish such offenses." *Heath v. Alabama*, 474 U.S. 82, 89 (1985). Regardless of the defense claims, the government would never abdicate its responsibility to investigate thoroughly all potential federal criminal charges against the defendant and any other persons who might have been involved. Such responsibility obviously continues into the future and should additional evidence be uncovered supporting other charges against the defendant or anyone else involved, the government will not hesitate to utilize the grand jury to investigate such evidence.

After the very short and deadline driven investigation leading to the initial indictment, the government, as noted above, was still faced with significant evidence (1) that the defendant was in the company of at least one other person before, during and after the January 6, 2006 armed carjacking/murder; and (2) that the defendant committed a very similar armed carjacking in Baltimore City just four days before the murder and was in the company of at least one other person during this carjacking. Regardless of the earlier state investigation, in the face of such evidence, it would have been prosecutorial malfeasance not to have continued to investigate to determine whether the defendant committed additional crimes, including conspiracy and carjacking, and whether other persons were involved in such crimes.

The defense attempts to meet its burden to overcome the presumption of regularity for this grand jury proceeding by noting that one of the defendant's relatives, Ulonda Bond-Jenkins, was called before the grand jury after the initial indictment and questioned about "[the defendant's] involvement and his whereabouts that day, her contacts with him after the shooting but before his arrest, and any admissions or disclosures he may have made to her regarding his alleged

5

involvement in [the murder]." *Defense Motion* at 2. Contrary to defense claims, the reference to Ms. Bond-Jenkins in fact bolsters the presumption of regularity.

As the defense should be well aware, Ms. Bond-Jenkins was not only the sister of the defendant but also the mother of Jamal Knox, now deceased. Knox was with the defendant both at the time of the carjacking/murder and at the time of the earlier January 2, 2006 carjacking and in fact *conspired* with the defendant to carjack. Ms. Bond-Jenkins was clearly an important witness to question about the involvement of the defendant *and* her son during this time period, *i.e.* whether the defendant and Knox *conspired* together. Such relevant questions would have included the defendant's "involvement [*with other persons*]" in the charged crimes, "his whereabouts [*with other people*] that day," and "any admissions or disclosures" by the defendant "regarding his alleged involvement [*with other persons*]" in the criminal acts. Such questions obviously would have also included the same information about her son, Jamal Knox. It was surely prudent during the investigation of a conspiracy to call before the grand jury the mother of a person now deceased who was possibly one of only two co-conspirators in the relevant conspiracy.

The defense in its motion is ultimately asking the Court to compel the government "to provide defense counsel copies of the grand jury minutes and transcripts of all witnesses who testified before the second [sic] grand jury regarding the January 5, 2006 incident." *Defense Motion* at 4. Once again, under the guise of a pretrial motion, the defense is attempting to obtain discovery, namely *Jencks* material, to which they are not presently entitled.

The defense has simply not met its burden of showing grand jury irregularity. Consequently, the defense motion should be denied.

        Respectfully submitted,

        Rod J. Rosenstein
        United States Attorney


By: _____
        Charles J. Peters
        Assistant United States Attorney


_____
John F. Purcell, Jr.
Assistant United States Attorney
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
410-209-4800


## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this ____ day of January, 2008, a copy of the foregoing Government's Opposition to Defendant's Motion for Appropriate Relief and Disclosures Relating to Abuse of the Grand Jury Process was mailed to Stanley J. Reed, Esquire, 3 Bethesda Metro Center, Suite 460, Bethesda, Maryland 20814-5367 and Eric R. Delinsky, Esquire, 1800 M Street, N.W., Suite 1000, Washington, D.C. 20036, Attorneys for Defendant.


_____
Charles J. Peters
Assistant United States Attorney