**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division**

_____
                                   )

**UNITED STATES OF AMERICA**     )
                                   )

          **v.**                        )       **Criminal Case No. CCB-08-0149**

                                   )

**BRIAN KEITH ROSE**            )
_____)

**REPLY IN SUPPORT OF DEFENDANT BRIAN KEITH ROSE'S
MOTION TO DISMISS THE SUPERSEDING INDICTMENT
ON CONSTITUTIONAL SPEEDY TRIAL AND DUE PROCESS GROUNDS
<u>OR, IN THE ALTERNATIVE, TO EXCLUDE EVIDENCE</u>**

The Government does not deny that Defendant Brian Keith Rose has been incarcerated without trial since January 18, 2006—the entire time facing murder, attempted car jacking and related firearms charges.  Nor does it deny—indeed, it readily embraces—the fact that 26 months into Mr. Rose's pre-trial detention, State and federal prosecutors, in an effort to circumvent an adverse evidentiary ruling, decided to secure an indictment against Mr. Rose in this Court *on precisely the same charges* that were pending against him in State court.  It therefore is undeniable that, at least as to these charges, the Government's admittedly tactical decision to start Mr. Rose's prosecution anew in this forum added 26 months to his pre-trial detention.

According to the Government, those 26 months are simply irrelevant to the Court's consideration of Mr. Rose's motion, because his Sixth Amendment right to a speedy trial did not attach until the initial federal indictment against him was returned on April 1, 2008.  In support of this position, the Government focuses principally on (1) the extensive body of case law holding that, *ordinarily*, a prior state arrest does not implicate a federal defendant's Sixth Amendment speedy right to a speedy trial (or the protections of the Speedy Trial Act) in a

subsequent federal prosecution; and (2) principles of dual sovereignty pursuant to which successive state and federal prosecutions for the same conduct does not run afoul of the Double Jeopardy Clause. The Government also emphasizes the fact the Mr. Rose sought, and was granted, several postponements of his State court trial date.

We respond to these arguments below in turn. But we note at the outset that the Government has advanced no argument at all to suggest that a needless 26-month post-accusation delay caused by a deliberate act of the Government in seeking a supposed advantage could be constitutionally permissible—in the event it is incorrect about when Mr. Rose's speedy trial right, in fact, attached. Thus, the success of Mr. Rose's motion turns on one simple question: when did his Sixth Amendment right to a speedy trial attach? As demonstrated in Mr. Rose's opening memorandum, and as further shown below, it attached on January 18, 2006, when Mr. Rose was arrested on the very charges for which he stands indicted to this day.

## I. The "Federal" Charges Against Mr. Rose Mirror the State Charges For Which He Was Arrested on January 18, 2006.

The Government contends that "*EVERY*" court that has considered the question has held that a prior state arrest ordinarily does not affect a federal defendant's Sixth Amendment right to a speedy trial, even if the state arrest arose from the same events that are the basis of the subsequent federal charge. Gov't Opp'n at 8 (emphasis in original). That very well may be the case, but that statement nevertheless does not address the separate issue presented by Mr. Rose's motion. Mr. Rose's State arrest did not merely arise from the same events that are the basis of the April 1, 2008, federal indictment. The actual offenses charged are the same. The Government concedes as much, stating, in its opposition to Mr. Rose's motion seeking relief from the Government's abuse of the grand jury process, that the federal indictment "essentially mirrored the charges in the state case." Gov't Opp'n [Dkt. No. 34], at 2.

2

Many of the cases cited by the Government do, in fact, speak to this separate question. And every one that does specifically distinguishes between occasions where state and federal charges actually mirror each other from the "ordinary" case in which the two sovereigns prosecute individuals on separate and distinct charges that may or may not arise out of the same course of conduct.[1]  For example, in *United States v. Garner*, 32 F.3d 1305 (8th Cir. 1994), the court expressly distinguished *United States v. Cabral*, 475 F.2d 715 (1st Cir. 1973), a case in which the First Circuit held that a prior state arrest had indeed triggered a federal defendant's Sixth Amendment speedy trial protection because, in *Cabral*, "the state and federal prosecution were arguably for the same type of weapons charge."  *Garner*, 32 F.3d at 1309 n.5.  "Here," the court in *Garner* went on to say, "the state charge and conviction for robbery and the federal charge for felon in possession of a firearm are separate and distinct charges."  *Id.*

Similarly, in *United States v. Marler*, 756 F.2d 206 (1st Cir. 1985), the court held that the defendant's prior state indictment on manslaughter and assault and battery charges did not trigger his Sixth Amendment right to a speedy trial with respect to subsequent federal criminal civil rights charges arising from the same course of conduct.  *Id.*  at 212.  In so holding, however,

---

[1] The first case the Government cites for this proposition, *United States v. Iaquinta*, 674 F.2d 260 (4th Cir. 1982), is not even a Sixth Amendment case at all but rather one that turned on the court's construction of a statute—the Speedy Trial Act.  As the Government elsewhere acknowledges, *see* Gov't Opp'n at 12, the court in *Iaquinta* expressly distinguished speedy trial questions of constitutional dimension from considerations under the Speedy Trial Act:

> The Speedy Trial Act is intended to mandate an orderly and expeditious procedure for federal criminal prosecutions by fixing specific, mechanical time limits within which the various progressions in the prosecution must occur.  In its arbitrary time limits, it is unlike the speedy trial rights under either the Sixth Amendment or the due process clause of the Fifth Amendment, both of which apply flexible standards, governed largely by considerations of prejudice in delays in prosecution.

*Iaquinta*, 674 F.2d at 264.  For the same reason, *United States v. Beede*, 974 F.2d 948 (8th Cir. 1992), is also incorrectly cited as authority for the proposition that a prior state arrest does not affect a federal defendant's Sixth Amendment speedy trial rights.  *See* Gov't Opp'n at 9.  The analysis in that case as well is limited to the Speedy Trial Act.

the court was compelled to distinguish not only its prior decision in *Carbral*—in which it had held that "the arrest on the *same charges* later prosecuted in federal, not state, court. . . converted the initial arrest into a federal 'accusation' on weapons charges for sixth amendment purposes," *Marler*, 756 F.2d at 212 (emphasis in original)—but also several decisions from other circuits recognizing that, where the initial state and subsequent federal charge are for the same offense,

> the suspect's speedy trial right attaches for purposes of federal prosecution on the date of the state arrest. *See United States v. Nixon,* 634 F.2d 306, 309 (5th Cir. 1981) (sixth amendment clock runs at time of initial arrest "when the next indictment is for precisely the same offense and same transaction") (citing *Cabral*), *cert. denied*, 454 U.S. 828 (1981); *United States v. Avalos*, 541 F.2d 1100 (5th Cir. 1976) (if state arrest for same charge later tried in federal court, sixth amendment right attaches); *Gravitt v. United States*, 523 F.2d 1211, 1215 n. 6 (5th Cir. 1975) ("For purposes of determining when the right to speedy trial attaches, the *basis* for the arrest is critical.") (citing *Cabral*); *United States v. DeTienne*, 468 F.2d 151, 155 (7th Cir. 1972) (sixth amendment right attaches at time of state arrest if federal indictment "really only gild[s] the charge underlying [defendant's] initial arrest and the different accusatorial dates between them are not reasonably explicable. . . ."), *cert. denied*, 410 U.S. 911 (1973). *Cf. United States v. Lai Ming Tanu*, 589 F.2d 82 (2d Cir. 1978) (leaving open question of whether sixth amendment right attaches on state arrest if same charges later prosecuted in federal court).

*Marler*, 756 F.2d at 212. And just like the court in *Garner*, *supra*, the court in *Marler* reasoned that "[h]ere the initial arrest was based solely on state law charges different from the federal charge presently at issue." *Id.*

Thus, as revealed in the cases cited by the Government, as well as in case law referenced in Mr. Rose's opening memorandum, *see* Def. Mot. [Dkt. No. 31], at 7-8, the applicable rule of law is as follows: a prior state arrest or indictment does not trigger a federal defendant's Sixth Amendment right to a speedy trial, *unless the subsequent federal charge is for the same offense*. For all its rhetoric, the Government's opposition is devoid of any authority saying otherwise. Because—as the Government admits—the April 1, 2008, federal indictment against Mr. Rose "essentially mirrored the charges in the state case," Gov't Opp'n [Dkt. No. 34], at 2, Mr. Rose's

Sixth Amendment right to a speedy trial attached on January 18, 2008, when he was arrested by State authorities on murder, attempted car jacking and related firearms charges, and not on April 1, 2008, when federal prosecutors indicted him on precisely the same charges.[2]

## II.   Mr. Rose Has Never Been Tried on These Charges.

The Government's opposition also mistakenly emphasizes irrelevant principles of dual sovereignty under which successive state and federal prosecutions for the same underlying conduct is constitutionally permissible.   *See*, *e.g.*, Gov't Opp'n at 9 ("Both the federal Government and the state Government may prosecute an individual for the same act, even if the defendant has already been prosecuted by the other for the same illegal activity.") (quoting *Abbate v. United States*, 359 U.S. 187, 195-96 (1959), *United States v. Smith*, 30 F.3d 568, 572 (4th Cir. 1994); *id.* at 11 ("The black-letter rule is that prosecutions undertaken by separate sovereign Governments, no matter similar they may be in character, do not raise the specter of double jeopardy as that constitutional doctrine is commonly understood.") (quoting *United States v. Guzman*, 85 F.3d 823, 826 (1st Cir. 1996)).[3]

---

[2] The Government's reliance on *United States v. Meijas*, 552 F.2d 435 (2d Cir. 1977)—the only case cited in the opposition where the federal Government similarly took over after a state prosecution became jeopardized by a state court suppression ruling—is also misplaced.  To be sure, the court in *Meijas* found that no Sixth Amendment violation had occurred on the facts of that case.  But the very next year, in *United States v. Lai Ming Tanu*, 589 F.2d 82 (2d Cir. 1978), the Second Circuit affirmatively limited the effect of *Meijas*.  After recognizing that the Supreme Court had not yet addressed the potential Sixth Amendment implications of a prior state arrest on a defendant "later indicted for substantially the same offense by a federal grand jury," *Lai Ming Tanu*, 589 F.2d at 87, the court clarified that, in *Meijas*, it simply had "found it unnecessary to decide . . . whether the dates of the state arrests were crucial for Sixth Amendment purposes," because the court "held that even if those dates were taken as the starting dates, there was still no constitutional speedy trial violation on the facts," *id.* at 88.  Thus, even in the Second Circuit, "[t]he question remains open . . . whether there are circumstances under which the Sixth Amendment speedy trial provision, as interpreted in *Barker v. Wingo*, may be applied continuously to successive state and federal prosecutions for the same transaction."  *Id.* at 88 (citing *United States v. Cabral*, 475 F.2d 715 (1st Cir. 1973)).

[3] The Government starts off its dual sovereignty discussion with reference to *United States v. MacDonald*, 456 U.S. 1 (1982), which it mischaracterizes as a case in which the Supreme Court rebuked the Fourth Circuit for erroneously applying the Sixth Amendment to a situation where an individual had been tried by *separate* sovereigns.  *See* Gov't Opp'n at 9-10.  The Government makes this mischaracterization even though it readily acknowledges that the defendant in *MacDonald* had been prosecuted by the United States military before being tried in federal civilian court.  *See id.* at 10.  It goes without saying that the United States military and United States Department of Justice are *not* separate sovereigns.  *See MacDonald*, 456 U.S. at 10 n.11 (noting that the Fourth Circuit below understood

Double jeopardy case law has no bearing on the Court's consideration of Mr. Rose's motion, and, if anything, serves to highlight the injustice of Mr. Rose's ongoing post-accusation delay.  Not only does Mr. Rose assert no double jeopardy claim at all (because, as a matter of law, Mr. Rose has no such claim), the point of his motion (and the injustice he suffers) is that he has not yet been tried by *any* sovereign.  It is irrelevant that Mr. Rose would not be able to establish that he has been deprived of a constitutional right he is not even asserting.

### III.   Any Continuance Mr. Rose Sought in State Court Should Not Be Weighed Against Him.

Although the Government contends that Mr. Rose sought multiple continuances in his State court capital murder proceedings, it does not attempt to explain why this fact, if true, should weigh against him.  This is not surprising.  As the Government knows, Mr. Rose never has suggested that his constitutional right to a speedy trial would have been violated if the State had tried him, as scheduled, on April 7, 2008.  The Government action that caused Mr. Rose's rights to be violated—the coordinated decision to scuttle the State court prosecution and re-indict Mr. Rose in this court on precisely the same charges that were pending against him—occurred *after* the last State court continuance the Government claims Mr. Rose to have requested.  Mr. Rose did not consent to the change of venue (and *de facto* continuance accomplished by the Government thereby), and his requests for continuances were without knowledge that the Government would assume this tactic.  The bottom line is that the change of venue resulted in months upon months of additional pre-trial detention to which Mr. Rose never consented.  Thus, absent a showing that Mr. Rose requested a continuance for improper purposes—an allegation

---

"that the prosecution by the Army and that by the Justice Department were conducted 'by the Government in its single sovereign capacity.'").

the Government nowhere makes—there is simply no basis to weigh any State court continuance, necessary for Mr. Rose to prepare his defense, against him.

## <u>CONCLUSION</u>

For the foregoing reasons, and for the reasons set forth in Mr. Rose's open memorandum, Mr. Rose respectfully requests that the Court dismiss the superseding indictment with prejudice, or, in the alternative, preclude the Government from offering expert testimony of latent fingerprint identification at trial in this case.

Dated: May 18, 2009                              Respectfully submitted,

                                                 LERCH, EARLY & BREWER, CHARTERED

                               By:    _____/s/_____
                                      Stanley J. Reed, Bar No. 00315
                                      3 Bethesda Metro Center, Suite 460
                                      Bethesda, MD  20814-5367
                                      Telephone: (301) 986-1300
                                      Facsimile: (301) 347-1796

                                      ZUCKERMAN SPAEDER, LLP

                               By:    _____/s/_____
                                      Eric R. Delinsky, Bar No. 17466
                                      Alexandra W. Miller
                                      R. Miles Clark, Bar No. 17465
                                      1800 M Street, N.W., Suite 1000
                                      Washington, D.C. 20036
                                      Telephone: (202) 778-1800
                                      Facsimile:  (202) 822-8106

                                      *Counsel for Defendant Brian Keith Rose*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 18, 2009, I caused the foregoing Reply in Support of Defendant's Motion to Dismiss the Superseding Indictment on Constitutional Speedy Trial and Due Process Grounds or, in the Alternative, to Exclude Evidence to be served via e-mail and by first class mail, postage prepaid, upon the following:

> John F. Purcell
> Assistant United States Attorney
> 36 Charles Street
> Fourth Floor
> Baltimore, MD  21201

                              /s/
                              Stanley J. Reed

894669.1                                                              81833.001