IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| Plaintiff : | |
| : | |
| v. : | Criminal No. CCB 08-0149 |
| : | |
| BRIAN KEITH ROSE : | |
| : | |
| Defendant : | |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO
HIS MOTION FOR APPROPRIATE RELIEF AND DISCLOSURES
RELATING TO ABUSE OF THE GRAND JURY PROCESS**

Defendant, Brian Keith Rose, through undersigned counsel, hereby responds to the Government's Opposition ("Opposition") to his Motion for Appropriate Relief and Disclosures Relating to Abuse of the Grand Jury Process ("Motion") as follows:

## I.   ARGUMENT

In its Opposition, the Government does nothing more than restate the applicable legal standards set forth in the Motion without affirmatively asserting that its solicitation of testimony from certain witnesses during the second Grand Jury proceeding was in fact merely "<u>incidental and necessary</u>" to a continuing investigation in this case. *See e.g. United States v. Williams,* 146 Fed. Appx. 425, 2005 WL 2108673 (11th Cir. 2005) (emphasis added).  Upon information and belief, Mr. Rose maintains that the Government subpoenaed certain witnesses to testify at the second Grand Jury, including his mother, sister and girlfriend, for the primary purpose of obtaining evidence from those witnesses relating to the charges contained in the original indictment, which was returned on April 1, 2006.  Mr. Rose requests that this Court take necessary and appropriate measures to evaluate the Government's unsupported claim that its

primary purpose in the Second Grand Jury proceeding was to investigate additional crimes, and concomitantly to discern what relief would be appropriate in the event the Court determines that the Government abused the grand jury process.

A. **The Government is Prohibited From Using the Grand Jury for the Sole Purpose of Preparing for Trial Under a Pending Indictment.**

It is black letter law that despite a presumption of regularity that attaches to grand jury proceedings, the government "cannot utilize the grand jury solely or even primarily for the purpose of gathering evidence in pending litigation." *United States v. Moss*, 756 F.2d 329, 332 (4th Cir.1985). <u>After an indictment is returned, the grand jury's investigative role generally ceases</u>. *United States v. DeCay*, 2006 WL 3290472 *1 (E.D.La.). Thus, where witnesses are questioned before a grand jury regarding previously charged offenses, courts often are called upon to determine whether such questioning was incidental and necessary with respect to any continuing investigation. *See e.g. United States v. Williams*, 146 Fed.Appx. 425, 2005 WL 2108673 (11th Cir.2005).

B. **The Government Fails to Assert that its Questioning of Witnesses Before a Second Grand Jury was Not Primarily for the Purpose of Gathering Evidence Related to the Changes in the Initial Indictment.**

The Government submits that "[w]here there is another legitimate purpose behind the grand jury investigation, the proceedings would not be improper merely because the Government may derive an incidental benefit." (Opposition, p. 4) (quoting *United States v. Gibbons*, 607 F.2d 1320, 1328 (10th Cir. 1979). Of course that is true; however, as Mr. Rose asserted in his Motion, there is at least a *prima facie* basis upon which the Court can conclude that the "benefits" the Government obtained from calling the aforementioned witnesses to the Second Grand Jury; were not "incidental;" and that the Government improperly utilized the grand jury process primarily to conduct discovery as to the already indicted charges surrounding the January 5, 2006 shooting

incident in Baltimore County. While the Government baldly described Mr. Rose's contentions as "completely groundless," it has failed to respond directly or in any meaningful way to them. (Opposition, p. 3).

In attempting to defend its decision to call a Second Grand Jury in this case, the Government cites only to its inherent power, separate and apart from the State's investigation, to determine what constitutes a punishable offense, and underscores its ability to utilize the grand jury to elicit incidentally "uncovered" evidence that happens to support existing charges. (Opposition, p. 5). The Government attributes a "very short and deadline driven investigation leading to the initial indictment" for its purported need to convene a second grand jury to conduct a continued investigation of additional federal crimes allegedly committed by Mr. Rose in addition to those indicted offenses arising from the events of January 5, 2006. (*Id*.) According to the Government, evidence it believed supported such continued investigation included the facts: (1) that the defendant was in the company of at least one other person before, during and after the January [5], 2006 armed carjacking/murder; and (2) that the defendant committed a very similar armed carjacking in Baltimore City just four days before the murder and was in the company of at least one other person during this carjacking." (*Id.*)

The Government's position is without merit. Evidence of both the circumstances surrounding the January 5, 2006 shooting incident (*e.g.* that Mr. Rose was in the company of at least one other person) and the alleged January 2, 2006 carjacking, were well-known to the Baltimore County State's Attorney long before the Government took over Mr. Rose's prosecution, and well prior to Mr. Rose's April 1, 2008 indictment by the first federal grand jury[1]. Prior to obtaining the original indictment in this case, the Government had full access to

---

[1] The alleged January 2, 2006 carjacking was documented in discovery materials provided to Mr. Rose's defense team in the Baltimore County prosecution.

3

myriad evidence obtained by Baltimore County prosecutors <u>over the previous two years</u> concerning the January 5, 2006 event, and the alleged January 2, 2006 incident.  In light of that, the Government's argument that the need for a continued investigation was prompted by the relatively brief amount of time that elapsed between Judge Souter's refusal to reconsider her ruling on the admissibility of fingerprint evidence and the April 1, 2008 initial federal grand jury proceeding, cannot withstand scrutiny, and falls woefully short of establishing that the Second Grand Jury was convened primarily for such a continued investigation.  (*See* Opposition, pp. 1-2).

      The Government attempts to defend its questioning of Ulonda Bond-Jenkins, Mr. Rose's sister, during the Second Grand Jury as relevant to the "question about the involvement of the defendant <u>and</u> her son during this time period, *i.e.* whether the defendant and Knox <u>conspired</u> together." (Opposition, p. 6) (emphasis in original).  This is sheer sophistry.  Leaving aside the vague nature of the conspiracy charge in the Superceding Indictment (itself a subject of a pending motion), it can hardly be disputed that Mr. Knox -- who died on or about June 30, 2007 -- was well-known to the Baltimore County State's Attorney as an alleged participant in the January 5, 2006 incident.  However, upon information and belief and investigation by counsel, Ms. Bond-Jenkins was questioned only briefly, if at all, about the January 2, 2006 carjacking incident.  Instead, at the Second Grand Jury, Ms. Bond-Jenkins was interrogated at length primarily about what her son told her about Mr. Rose's alleged involvement in the January 5th incident, and whether Mr. Rose had disclosed or admitted anything to her with regard to his alleged involvement in the January 5th incident.

      Finally, and also upon information and belief, Monet Carter, Mr. Rose's former girlfriend and mother of one of his children, was called to testify at the Second Grand Jury primarily in

connection with the charges in Mr. Rose's initial indictment, and was asked few, if any questions, about the additional charge contained in the Superceding Indictment.

## II.   CONCLUSION

The Government does not vigorously dispute that at least some of the testimony it presented to the grand jury which returned the Superseding Indictment in this case was not incidental or necessary to a continuing investigation in this case.  The issue before the Court is whether the Court should invoke some remedial mechanism to determine whether this testimony was elicited by the Government for the sole or primary purpose of discovering additional evidence relating to the charges contained in Mr. Rose's initial indictment.  Without access to the Grand Jury transcripts, Mr. Rose cannot, at this time further challenge the Government's abuse of the grand jury process in order to sustain his "burden of demonstrating that an irregularity occurred." *Moss*, 756 F.2d at 332, and therefore asks this Court to conduct an in camera review of all testimony presented to the Second Grand Jury to determine whether the Government abused the grand jury process and to assess what specific remedies might be most appropriate in the event of such a determination.

Respectfully submitted,

LERCH, EARLY & BREWER, CHARTERED

By:     /s/
Stanley J. Reed, Bar No. 00315
3 Bethesda Metro Center, Suite 460
Bethesda, MD  20814-5367
(301) 986-1300 (Phone)
(301) 347-1796 (Facsimile)

5

                      ZUCKERMAN SPAEDER, LLP

By:      /s/
       Eric R. Delinsky, Bar No. 91624
       1800 M Street, N.W., Suite 1000
       Washington, D.C. 20036
       (202) 778-1800 (Phone)
       (202) 822-8106 (Facsimile)
       *Counsel for Defendant Brian Keith Rose*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of May 2009, I caused a copy of the foregoing to be sent via electronic and first-class mail to:

John F. Purcell, Jr.
Assistant United States Attorney
36 South Charles Street, 4th floor
Baltimore, MD 21201

                      /s/
                  Stanley J. Reed