IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CRIMINAL NO. CCB-08-0149 |
| | : |
| BRIAN KEITH ROSE | : |

...o0o...

# MEMORANDUM

Warren Tee Fleming was shot and killed on January 5, 2006, in Baltimore County during an apparent attempt to take his 2001 Mercedes sedan. Brian Rose has been indicted by a federal grand jury for charges including attempted carjacking resulting in the death of Mr. Fleming; he faces trial in January 2010. At issue is the admissibility of fingerprint evidence identifying Mr. Rose as the source of two latent prints recovered from the Mercedes and one latent print recovered from a stolen 2003 silver Intrepid connected with the murder scene. Oral argument on the cross-motions in limine was heard on September 4, 2009, and an Order finding the evidence admissible was issued on September 8, 2009. This Memorandum will explain the basis for that ruling.

**Background**

The procedural history of this case, as well as the government's proffered evidence of Mr. Rose's culpability, are thoroughly discussed in the papers and will not be repeated in detail. Of note in the procedural history is a ruling by the Baltimore County judge before whom Mr. Rose was brought on state murder charges. That ruling excluded the proposed fingerprint identification testimony as unreliable under Md. Rule 5-702 and *Reed v. State*, 391 A.2d 364 (Md. 1978).[1] When reconsideration of the ruling was denied in February 2008, the case was taken under

---

[1] *Reed* adopted the general acceptance test of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). *See Reed*, 391 A.2d at 372.

consideration by the United States Attorney's Office for the District of Maryland.[2]   An indictment was returned in April 2008, and a superseding indictment followed in June 2008.[3]   Initially, the case was assigned to Judge Andre M. Davis; it was transferred to me in April 2009.   The government filed a "motion in limine to admit expert testimony of latent fingerprint identification without a *Daubert* hearing" in July 2008; the defendant filed a response and a cross-motion to exclude the testimony in June 2009; and the government filed a supplemental motion in limine in July 2009.   The court also has been provided a copy of the *amicus* brief prepared for the Baltimore County Circuit Court proceeding as well as memoranda prepared by SWGFAST[4] and the IAI[5]. Relying on the motion exhibits and relevant case law including *United States v. Crisp*, 324 F.3d 261 (4th Cir. 2003), the government seeks to have the court take judicial notice of the general acceptance by experts in the relevant field that fingerprints are unique and permanent, that latent fingerprints can be individualized (identified) by correct application of the ACE-V methodology, and that the ACE-V methodology has a very low incidence of error.   The defense contends that the methodology is not reliable and seeks an evidentiary hearing.[6]   The defense does not, however, separately contest the specific identifications made by application of the ACE-V

---

[2] Without criticizing the conscientious decision made by the state court judge based on the record before her, I note that Maryland's intermediate appellate court recently reaffirmed "Maryland's view that a court can take judicial notice of the reliability of fingerprint identification evidence." *Markham v. State*, ___ A.2d ___, No. 424, 2009 WL 4070865, at *10 (Md. Ct. Spec. App. Nov. 25, 2009).

[3] The superseding indictment added charges related to a separate alleged carjacking on January 2, 2006.

[4] The Scientific Working Group on Friction Ridge Analysis, Study, and Technology.

[5] The International Association for Identification.

[6] Mr. Rose does not appear to challenge the proposition that each person's fingerprints are unique.   (*See* Def.'s Mem. 15.)

methodology in this case.

## Case Law

Analysis of the relevant case law of course begins with *United States v. Crisp*, 324 F.3d 261 (4th Cir. 2003). As Mr. Rose acknowledges, the majority in *Crisp* found no abuse of discretion in a trial court's decision to admit expert fingerprint identification testimony in a criminal case under the standard set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). *See Crisp*, 324 F.3d at 268-70. In so doing, the Fourth Circuit addressed general acceptance, uniform professional standards, and error rates, finding that

> In addition to a strong expert and judicial consensus regarding the reliability of fingerprint identification, there exist the requisite 'standards controlling the technique's operation.'

(internal citations omitted), and noting the trial judge was entitled to credit testimony that "fingerprint identification has an exceedingly low rate of error." *Id.* at 269. Finally, the Circuit expressed confidence, as did the Supreme Court in *Daubert*, in "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" as the appropriate methods of attacking perceived flaws in admissible scientific or technical evidence. *Id.* at 269-70.

Before and after *Crisp*, it appears that every federal circuit to consider the issue has found expert fingerprint identification testimony admissible, albeit based on somewhat differing conclusions as to the various *Daubert* factors. *See United States v. Baines*, 573 F.3d 979, 989-92 (10th Cir. 2009); *United States v. Spotted Elk*, 548 F.3d 641, 663 (8th Cir. 2008); *United States v. Vargas*, 471 F.3d 255, 265-66 (1st Cir. 2006); *United States v. Abreu*, 406 F.3d 1304, 1307 (11th Cir. 2005); *United States v. Mitchell*, 365 F.3d 215, 244-46 (3rd Cir. 2004); *United States v. George*, 363 F.3d 666, 672-73 (7th Cir. 2004); *United States v. Sherwood*, 98 F.3d 402, 408 (9th

Cir. 1996); *see also United States v. Llera Plaza*, 188 F. Supp. 2d 549, 575-76 (E.D. Pa. 2002). Most recently, while thoroughly considering many of the same arguments raised by counsel in this case, and acknowledging the strength of some defense contentions, the Tenth Circuit nonetheless found fingerprint evidence sufficiently reliable to be admissible. *Baines*, 573 F.3d at 992. The court noted in particular that the technique can be and has been tested; that the known error rate is very low; and that fingerprint analysis has obtained "overwhelming acceptance," in the relevant expert community. *Id.* at 990-91.

**Present Case**

The record before me in this case, though without live testimony, contains an abundance of information to guide the gatekeeping decision under *Daubert, Crisp,* and Fed.R.Ev. 702. In addition to the briefing on relevant case law, the parties proffer the National Academy of Sciences ("NAS") Report, the Office of the Inspector General ("OIG") Report related to the Brandon Mayfield case, affidavits from defense experts Drs. Lyn and Ralph Haber, and, as noted, the *amicus* brief prepared for the Baltimore County case and the IAI and SWGFAST memoranda. Having carefully considered these documents and counsels' argument, I am persuaded that the government's proffered expert testimony on fingerprint identification is properly admissible in this case.

In February 2009, the National Research Council of the NAS issued a report titled "Strengthening Forensic Science in the United States: A Path Forward" ("the NAS Report"). The Report identified a need for additional published peer-reviewed studies and the setting of national standards in various forensic evidence disciplines, including fingerprint identification. *See* NAS Report 19-24. While the Report quoted a paper by Haber and Haber, the defendant's proposed experts in this case, in which the Habers found no "available scientific evidence of the validity of

4

the ACE-V method," NAS Report 143, the Report itself did not conclude that fingerprint evidence was unreliable such as to render it inadmissible under Fed. R. Ev. 702.  Indeed Judge Harry Edwards, who co-chaired the project, made it clear that nothing in the Report was intended to answer the "question whether forensic evidence in a particular case is admissible under applicable law."  Hon. Harry T. Edwards, Statement before U.S. Senate Judiciary Committee (Mar. 18, 2009).  Understandably, the report provoked debate and response from the relevant scientific community, including both SWGFAST and IAI.  *See* Letter from Robert J. Garrett, President of IAI, to Senator Patrick J. Leahy (Mar. 18, 2009), *available at* http://www.theiai.org/current_affairs/nas_response_leahy_20090318.pdf; SWGFAST NAS Position Statement (Aug. 3, 2009), *available at* http://www.swgfast.org/SWGFAST_ Position_Statement_NAS_2009_08_03.pdf.  While these groups support many of the NAS recommendations, they strongly resist the conclusion proffered by the defense that fingerprint identification has been shown unreliable.

The defense also relies on the March 2006 OIG Report titled "A Review of the FBI's Handling of the Brandon Mayfield Case" ("the OIG Report").  (Gov't's Motion Ex. 2).  The OIG Report confirms that individual examiners can and do make mistakes.  Any claim of a "zero" error rate for fingerprint identification that does not acknowledge the possibility of examiner error would be misguided.  It is important to recognize, however, that the OIG Report does not discredit the ACE-V methodology applied in Mr. Rose's case.[7]  Indeed, examiners in Spain made

---

[7] The Report concluded that : "In summary, we believe that the unusual similarity between Mayfield's fingerprint and LFP 17 was a major factor in the misidentification.  However, we believe that the FBI examiners could have prevented the error by a more rigorous application of several principles of latent fingerprint examination methodology."  (OIG Report, Gov't's Motion Ex. 2 at 194).

the correct identification of the print by using the ACE-V methodology.  The OIG report thus teaches the importance of independent verification of an examiner's findings, and the corresponding importance of a defendant's opportunity to have an independent expert examine the latent prints at issue in a particular case to determine whether there is a basis to claim that a misidentification has been made.[8]

Finally, the Habers' criticism of fingerprint methodology from their perspective as human factors consultants does not outweigh the contrary conclusions from experts within the field as evidenced by caselaw and the *amicus* brief in this case.  Significantly, on the critical issue of erroneous positive identifications (as opposed to erroneous exclusions or "inconclusive" findings, which do not prejudice the defendant), the Habers surveyed the literature and pointed to erroneous identifications ranging from zero to 0.4% to 1% to a high of only 3% as to one set of "more difficult" latents.  (*See* Def.'s Mem. Ex. 3 at 12-13.) While it may not be possible to calculate an overall "error rate," as the Habers explain, there is nothing to contradict the conclusion reached by many courts and other experts that the incidence of error in the sense of erroneous misidentification, as occurred in the Mayfield case, is extremely rare.

Accordingly, for the reasons stated above, I have concluded that fingerprint identification evidence based on the ACE-V methodology is generally accepted in the relevant scientific community, has a very low incidence of erroneous misidentifications, and is sufficiently reliable to be admissible under Fed. R. Ev. 702 generally and specifically in this case.

December 8, 2009                                            /s/
Date                                            Catherine C. Blake
                                                United States District Judge

---

[8]  Mr. Rose has had that opportunity but offers no such expert's testimony in his defense.